David M. Wahlquist (3349)
dwahlqui@kmclaw.com
Adam D. Wahlquist (Bar No. 12269)
awahlquist@kmclaw.com
**KIRTON McCONKIE**
2600 W. Executive Parkway, Suite 400
Lehi, Utah 84043
Telephone: (801) 426-2100
Facsimile: (801) 426-2101

Jeffrey D. Kaliel (*pro hac vice* pending)
Sophia Goren Gold (*pro hac vice* pending)
**KALIEL PLLC**
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Hassan A. Zavareei (*pro hac vice* pending)
Andrea R. Gold (*pro hac vice* pending)
**TYCKO & ZAVAREEL LLP**
1821 L Street NW, Suite 1000
Washington, DC  20036
(202) 973-0900
(202) 973-0950 (FAX)
hzavareei@tzlegal.com
agold@tzlegal.com

Jeff Ostrow (*pro hac vice* pending)
Daniel Tropin (*pro hac vice* pending)
Jonathan Streisfeld (*pro hac vice* pending)
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-449-4602
ostrow@kolawyers.com
tropin@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| **CHRISTOPHER COLEMAN**,<br>on behalf of himself<br>and all others similarly situated,<br>    Plaintiff,<br>  v.<br>**ALLY BANK**,<br>    Defendant. | Case No. _____<br><br>**PROPOSED CLASS ACTION** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff Christopher Coleman by counsel, and for his Class Action Complaint against the Defendant Ally Bank, alleges as follows:

## JURISDICTION

1. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1335(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than Defendant.

2. Venue and personal jurisdiction are proper in this district because Defendant is located in a county encompassed by this District.

## PARTIES

3. Plaintiff Christopher Coleman is a natural person who is a citizen of Illinois. Mr. Coleman has an online savings account with Defendant, Ally Bank ("Ally").

4. Defendant Ally is a national bank. Ally is headquartered in Sandy, Utah. Ally's accountholders are located across the nation.

## NATURE OF THE ACTION

5. This is a civil action seeking monetary damages, restitution and declaratory relief from Ally, arising from the unfair and unconscionable assessment and collection of Non-Sufficient Funds Fees ("NSF Fees"), which Ally charges when it returns certain checking account Automated Clearing House ("ACH") debit requests unpaid.

6. Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Ally arising from the assessment of multiple $25 NSF Fees on the same "Overdraft Item"[1], which is barred by the account contract and is deceptive.

7. Three documents permit (collectively, the "Account Documents") Ally to impose an overdraft fee or NSF Fee and address the policies at issue in this Complaint. *See* Straight Talk Product Guide: Your Interest Checking Account ("Checking Fee Schedule"), attached as Exhibit A; Straight Talk Product Guide: Your Online Savings Account ("Savings Fee Schedule"), attached as Exhibit B; Deposit Agreement and Disclosures (Deposit Agreement"), attached as Exhibit C.

8. Plaintiff does not dispute Ally's right to either (a) reject a transaction and charge a single NSF Fee or (b) pay a transaction and charge a single OD Fee, but Ally unlawfully maximizes its already profitable account fees with deceptive practices that also violate its contract.

9. Specifically, Ally unlawfully assesses *multiple* NSF Fees on a single item. In violation of its contract and reasonable consumer understanding, Ally often charges more than one NSF Fee on the *same item*, even though the contract states—and reasonable consumers understand—that the same item can only incur a *single* NSF Fee. These double, triple, and even higher penalties crush accountholders already struggling to make ends meet.

10. In Ally's sole and undisclosed view, each time it processes a transaction for payment after a having rejected it for insufficient funds, it becomes a new, unique item or

---

[1] In usual terminology, A bank will either (a) reject a transaction and charge an NSF Fee or (b) pay a transaction and charge an overdraft fee ("OD Fee"), Ally, in its documents uses different verbiage: referring to what's commonly known as NSF Fees as "Overdraft Item returned".

transaction that is subject to another NSF Fee. But Ally's Account Documents never even hint that this counterintuitive result could be possible. Moreover, the premise is far from obvious as a matter of common sense and becomes even less so when one considers that, upon information and belief, Ally's own bank statements refer to the re-attempted items as "RETRY PYMT"—i.e., mere iterations of the same initial item, not items *ex nihilo*.

11. Ally's Account Documents indicate that only a single NSF Fee will be charged for "Overdraft Items", no matter however many times the request for payment is reprocessed. An electronic item reprocessed after an initial return for insufficient funds cannot and does not fairly become a new, unique item for NSF Fee assessment purposes.

12. Indeed, with this improper practice, Ally was able to rack up an astounding *$75 in NSF Fees on a single $28 ACH payment*—even though its contract with Plaintiff permitted Ally to charge only a single NSF Fee.

13. This practice works to catch accountholders in an increasingly devastating cycle of bank fees.

14. Plaintiff and other Ally customers have been injured by Ally's practices. On behalf of himself and the putative class, Plaintiff seeks damages and restitution for Ally's breach of contract, including the covenant of good faith and fair dealing.

15. Defendant's improper scheme to extract funds from accountholders already struggling to make ends meet has victimized Plaintiff and thousands of other accountholders. Unless enjoined, Defendant will continue to engage in this scheme and cause substantial injury to accountholders.

## JURISDICTION

16. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1335(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than Ally.

17. Venue and personal jurisdiction are proper in this district because Ally is located in a county encompassed by this District.

## PARTIES

18. Plaintiff Christopher Coleman is a natural person who is a citizen of Illinois. Mr. Coleman has an online savings account with Ally.

19. Defendant Ally is a national bank. Ally is headquartered in Sandy, Utah. Ally's accountholders are located across the nation.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.   ALLY CHARGES TWO OR MORE NSF FEES ON THE SAME ITEM

20. As alleged more fully herein, Ally's Account Documents allow it to take certain steps when an accountholder attempts a transaction, but does not have sufficient funds to cover it. Specifically, Ally may (a) authorize the transaction and charge a single $25 OD Fee; or (b) reject the transaction and charge a single $25 NSF Fee.

21. In contrast to its Account Documents, however, Ally regularly assesses two or more NSF Fees on the same item or transaction.

22. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice

5

of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is reprocessed for payment multiple times.

23. Ally's Account Documents never disclose this practice. To the contrary, Ally's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

### A. Examples of Ally's Imposition of Multiple NSF Fees on a Single Overdraft Item

24. There are numerous instances in which Ally charged NSF Fees on Plaintiff's Overdraft Items that it returned unpaid, and in which Ally charged multiple NSF Fees on a single Overdraft Item.

25. On December 19, 2018, Mr. Coleman attempted a $28.02 payment via an Automated Clearing House ("ACH") payment.

26. Ally rejected payment of the item due to insufficient funds and charged Mr. Coleman a $25 NSF Fee for doing so.

27. Eight days later, on December 27, 2018, the same item was reprocessed for payment, and again Ally rejected the item due to insufficient funds, and again charged Mr. Coleman a $25 NSF Fee.

28. Yet again, on January 3, 2019, the same item was reprocessed for payment, and again Ally rejected the item due to insufficient funds, and again charged Mr. Coleman a $25 NSF Fee.

29. In sum, *Ally charged Mr. Coleman $75 in NSF Fees to attempt to process a single payment that was roughly a third of that amount.*

30. Mr. Coleman took no affirmative action to reinitiate or resubmit the payment.

31. Mr. Coleman understood the ACH payment be a single Overdraft Item, capable at most of receiving a single NSF Fee.

### B.     Ally May Not Charge More Than One NSF Fee Per Overdraft Item

32.    Ally's "Fee Schedules" for both savings and checking accounts indicate that only a single NSF Fee will be assessed per "Overdraft Item returned" due to insufficient funds:

> Fee for Overdraft Item Returned $25
> • Maximum one fee per day
> • The fee is charged when you don't have enough money in your checking account to cover a transaction(s).
> •The fee isn't charged for a one-time debit card transaction or ATM withdrawal
> • **We won't charge an additional fee even if you have a negative account balance over an extended period**

Checking Fee Schedule, Ex. A; Savings Fee Schedule, Ex. B (emphasis added).

33.    Ally's Deposit Agreement and Disclosures (Deposit Agreement") similarly states:

> Fee for Overdraft Item Returned Fee assessed when a presented transaction(s) is returned, other than a one-time debit card transaction or ATM withdrawal, and such return causes or could cause your account to not have sufficient funds available
>
> […]
>
> When a transaction is presented against your account, and your account either does not have sufficient funds or the transaction would cause your account to not have sufficient funds, and you have…transacted by…an ACH transaction….[you] will be charged an overdraft fee (one (1) fee maximum per day) unless the transaction will result in your account being overdrawn by less than $10.

Deposit Agreement, at 30.

34.    In none of the documents is the phrase "Overdraft Item" defined.

35.    Moreover, in the fee schedule documents, Ally links OD Fees and NSF Fees, disclosing them together, in similar ways, and with nearly identical language.  This is important because there is no way an item paid into overdraft can be processed again or can incur more than one OD Fee.  By linking OD Fees and NSF Fees so closely in the Account Documents, and disclosing such fees in a uniform way, Ally's Account Documents support the common sense

understanding that it will only charge one fee per item. However, for certain transaction types, it **is** Ally's practice to charge more than one NSF Fee on that same item.

36. Ally's purportedly "Straight Talk" Fee Schedules compound the common sense understanding by misrepresenting to consumers that "We won't charge an additional fee even if you have a negative account balance over an extended period." Ex. A; Ex. B.

37. In sum, the same instruction for payment on an account cannot conceivably become a new "Overdraft Item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff did not ask Ally to resubmit it.

38. There is no indication in the Account Documents that the same item is eligible to incur *multiple* NSF Fees.

39. Consistent with express representations in the Account Documents, reasonable consumers understand any given authorization for payment to be one, singular "Overdraft Item," as that term is used in Ally's Account Documents.

40. The Account Documents bar Ally from assessing multiple NSF Fees on the same Overdraft Item.

41. Customers reasonably understand, based on the language of the Account Documents, that Ally's reprocessing of checks or ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

42. Financial institutions like Ally that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks that do engage in this abusive practice disclose it expressly to their accountholders—something Ally never did.

43. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Ally, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

44. First Hawaiian Bank engages in the same abusive practices as Ally, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

45. Ally provides no such disclosure, and in so doing, deceives its accountholders.

**C.    Ally Abuses Its Discretion**

46. To the extent the Account Documents do not explicitly bar the practice described above, Ally exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it utilizes this practice.

47. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Ally is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Ally has a duty to honor transaction requests in a way that

9

is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Ally foisted on Plaintiff and its other customers—Ally has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Ally abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple NSF Fees for the same transaction.

48. Ally maintains complete discretion not to assess NSF Fees on transactions at all. Ally exercises this discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it charges more than one NSF Fee on a single item. Further, Ally abuses the power it has over customers and their bank accounts and acts contrary to customers' reasonable expectations under the Deposit Agreement. This is a breach of Ally's implied covenant to engage in fair dealing and act in good faith.

49. It was bad faith and totally outside Plaintiff's reasonable expectations for Ally to use its discretion to assess three NSF Fees for a single attempted, rejected payment.

50. When Ally charges multiple NSF Fees, Ally uses its discretion to define the meaning of Overdraft Item in an unreasonable way that violates common sense and reasonable consumer expectations.  Ally uses its contractual discretion to set the meaning of that term to choose a meaning that directly causes more NSF Fees.

## **CLASS ACTION ALLEGATIONS**

51. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

52. The proposed class is defined as:

> All Ally savings and checking account holders in the United States who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "Class").

53. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

54. Excluded from the Class are Ally, its parents, subsidiaries, affiliates, officers and directors, any entity in which Ally has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Ally's records.

56. Notice to class members can be accomplished after obtaining the identity of class members, which can be ascertained only by resort to Ally's records.

57. The claims of Plaintiff are typical of the claims of the Class in that he, like all Class members, was charged improper NSF Fees. Plaintiff, like all Class members, has been damaged by Ally's misconduct in that he paid improper NSF Fees. Furthermore, the factual basis of Ally's

misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

58. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

59. Among the questions of law and fact common to the Class are whether Ally:

    a. Charged multiple NSF Fees on a single Overdraft Item;

    b. Breached its contract with consumers by charging multiple NSF Fees on a single Overdraft Item;

    c. Breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single Overdraft Item; and

    d. Whether Plaintiff and the Class were damaged by Ally's conduct and if so, the proper measure of damages.

60. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Ally, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Ally's misconduct will proceed without remedy.

62.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

63.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

64.     Plaintiff and Ally have contracted for bank account services. That contract does not permit Ally to charge multiple NSF Fees for a single Overdraft Item.

65.     Ally has breached its account agreement with customers by charging multiple NSF Fees for a single Overdraft Item.

66.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract unless otherwise excused.

67.     Plaintiff and members of the Class have sustained damages because of Ally's breach of the contract and breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

68. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

69. Plaintiff and Ally have contracted for bank account services as alleged herein.

70. Under the laws of Utah, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

71. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

72. Ally has breached the covenant of good faith and fair dealing in its account agreement with customers by charging multiple NSF Fees for a single Overdraft Item.

14

73. Instead of exercising that discretion in good faith and consistent with Plaintiff's reasonable expectations, Ally abuses that discretion to take money out of Plaintiff's account without his permission and contrary to his reasonable expectations that he will not be charged multiple NSF Fees for the same transaction. Specifically, Ally regularly charges NSF Fees upon reprocessing of previously declined transactions.

74. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

75. Plaintiff and members of the Class have sustained damages because of Ally's breach of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class a jury trial on all claims so triable and judgment as follows:

1. Declaring Ally's NSF Fee policies and practices to be in breach of its contract with accountholders;

2. Restitution of all NSF Fees paid to Ally by Plaintiff and the Class above per Overdraft Item;

3. For each member of the Class, actual damages in an amount according to proof;

4. Pre-judgment interest at the maximum rate permitted by applicable law;

5. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

6. Such other relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Dated: June 12, 2019                               Respectfully submitted,

                                              KIRTON | McCONKIE

                                              By _lsl Adam D. Wahlquist_

                                              David M. Wahlquist
                                              Adam D. Wahlquist
                                              *Counsel for Plaintiff and the Proposed Class*